Edmon A. MORGAN, Walter Brice, Gilbert Stone, Jeff Dodson, Individually and on behalf of all others similarly situated, Plaintiffs,

v.

LABORERS PENSION TRUST FUND FOR NORTHERN CALIFORNIA, Sal Minerva, C. R. Johnson, Jessie O. Payne, John F. Peterson, Phil Thorpe, Morris K. Daley, Wallace Benson, Richard E. Hall, Carl K. Lawrence, Clifford W. Swenson, Individually and in their capacities as trustees of the Laborers Pension Trust Fund for Northern California, Defendants.

No. C–76–1250–CBR.

United States District Court,
N. D. California.

Feb. 20, 1979.

Katharine T. Bartlett, L. Thomas Surh, Legal Aid Society of Alameda County, Oakland, Cal., for plaintiffs.

Thomas E. Stanton, Jr., Johnson & Stanton, San Francisco, Cal., for defendants.

## MEMORANDUM OF OPINION

RENFREW, District Judge.

On June 21, 1976, plaintiffs, four hourly laborers who had been unable to qualify for pension benefits from defendant Laborers Pension Trust Fund for Northern California ("Trust Fund"), brought suit against the Trust Fund and its trustees in this Court. Claiming that the eligibility structure of the Trust Fund's pension plan arbitrarily and capriciously excluded a significant number of covered workers from pension benefits in violation of the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"), and the Taft-Hartley Act, 29 U.S.C. § 186(c)(5), plaintiffs sought injunctive relief, declaratory relief, and monetary damages.

On November 3, 1978, plaintiffs filed two motions for the Court's consideration. The first sought leave to file an amended com- plaint naming three additional parties plaintiff, or, in the alternative, leave for these parties to intervene. The second sought an order certifying this action as a class action. These are the motions now before the Court.

## AMENDMENT OF COMPLAINT

There are four plaintiffs presently named in the action before this Court: Edmon Morgan, Walter Brice, Gilbert Stone, and Jeff Dodson. Plaintiffs' counsel seeks to amend the complaint to add three additional plaintiffs: Robert Pelts, George Dyer, and Daniel C. Greathouse. They contend that the addition of these three new plaintiffs would "provide the court with both a broader and a more representative sample of factual situations relating to the class allegations in this action."

Rule 15 of the Federal Rules of Civil Procedure permits a party to amend his pleading if the court finds that "justice so requires." Rule 21 further states that "[p]arties may be * * * added by order of the court on motion of any party * * * at any stage of the action and on such terms as are just." These rules, as is the case with all the federal rules, are intended to be liberally construed. In this case they will be construed to permit amendment.

Plaintiffs' lawsuit directs a challenge at three of the Trust Fund's pension eligibility criteria: (1) the two-year break-in-service rule that was in effect prior to August 1, 1975; (2) the age and length-of-service vesting requirements that were in effect prior to February 1, 1973; and (3) the method used by the Trust Fund to compute pension credit in years and fractions of years. The addition of the three new plaintiffs will aid the Court in its consideration of the issues raised by presenting factual situations that more completely illustrate the nature and application of these challenged criteria.

Plaintiff Pelts worked for 17 years as a laborer in employment covered by the Trust Fund. In 1968 he stopped working due to a back problem, and he therefore incurred a

break in service two years later. At that point he was 53 years old and, due to the manner in which the Trust Fund computed pension credits, he had accumulated only 13¼ credits. Because he was neither 50 years old with at least 15 years of credit, nor 55 years old with at least 10 years of credit, he did not vest under Trust Fund rules and he therefore forfeited his credits and did not qualify for a pension.

Plaintiff Pelts' case demonstrates how the Trust Fund's age and length-of-service requirement might cause a laborer who has worked continuously for many years to be denied a pension. None of the four originally named plaintiffs present a comparable fact situation.[1] Although the Court of course takes no position as to whether the age and length-of-service requirement, alone or in conjunction with other provisions, is arbitrary or capricious, it does conclude that the addition of plaintiff Pelts would help in its understanding of the nature of the problem alleged.

Plaintiff Dyer worked as a laborer in covered employment from 1946 to 1967, earning 18 years of pension credit. In 1968, allegedly because of the scarcity of work in covered employment, he obtained work outside of the Laborers' Union. Because he was 48 years old at the time, and not 50 as required by the then existing vesting rules, his resulting break in service caused him to forfeit his years of accumulated pension credit.

Plaintiff Dyer's case illustrates how the age requirement for vesting might cause a laborer to forfeit substantial pension credits because he had not reached a certain age when he was no longer able to obtain substantial employment through the union. No other plaintiff presents this situation as clearly.[2] Therefore, the Court finds that the addition of plaintiff Byer would also help in its understanding of the application of the challenged rules.

Plaintiff Greathouse worked as a laborer in covered employment from 1944 to 1963. In that year, he was dispatched by the Laborers' Union hiring hall to work for American Pipe Company. After two years of employment at American Pipe Co., he learned that his new employer did not contribute to the Trust Fund and that as a result he had incurred a break in service, causing a forfeiture of the 9¾ years of accumulated pension credit he had previously earned. In 1967, Greathouse returned to covered employment, accumulating 4¾ years of credit before retirement.

Plaintiff Greathouse illustrates how the break-in-service rule might operate to bar a laborer from pension eligibility when the laborer mistakenly, but in good faith, takes employment outside the covered employment. Again, the Court finds that the addition of this plaintiff would be helpful in its consideration of plaintiffs' case.

Although plaintiffs assert that the addition of these plaintiffs would be in the interest of justice, defendants contend that it would be both futile and prejudicial for the Court to permit the requested amendment of the complaint. These arguments must be rejected.

■ The claim that this amendment would be futile is based on defendants' assertion that none of the three additional plaintiffs has exhausted the appeals procedures established by the Trust Fund, and therefore the Court could not find them to be proper class representatives. As will be shown later in this opinion, however, plaintiffs' failure to exhaust does not preclude them from continuing in the action. Any appeal they might have taken would have been denied. Therefore, their failure to appeal their pension denials should not prevent them from entering this action. Furthermore, in light of the nature and purpose of their lawsuit, no policy of ERISA favoring individualized eligibility determinations compels a different result. See p. 682, infra.

---

1. Although plaintiff Brice presented similar allegations, this Court finds that his claim is barred by the statute of limitations. See p. 679, infra.

2. Again, plaintiff Brice presented similar allegations but his claim is time barred.

■ The claim that amendment would be prejudicial is based on defendants' contention that they need to take discovery of these additional plaintiffs in order adequately to prepare their defense. The Court is sympathetic to this argument. However, it concludes that the proper response is to extend defendants' discovery time rather than to deny plaintiffs' motion to amend the complaint.

For these reasons, the motion to amend will be granted.

## CLASS ACTION

Plaintiffs' second motion is for an order certifying this lawsuit as a class action pursuant to Rule 23(c)(1) of the Federal Rules of Civil Procedure. Their putative class consists of all hourly laborers who

"(1) have or shall have worked at least 10,000 hours in the construction industry, and

"(2) have been, now are, or shall be unable to qualify for pension benefits from defendant Trust Fund because of one or more of the provisions of the Fund

herein alleged to be arbitrary and [capricious]."[3] Brief in Support of Plaintiffs' Motion for Leave to Amend Complaint etc., at p. 11.

For the reasons set forth below, this motion will be granted as well.

In order to obtain class certification plaintiffs must demonstrate that each of the four prerequisites set forth in Rule 23(a) and one of the prerequisites of Rule 23(b) have been satisfied. See *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 163, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Wofford v. Safeway Stores, Inc.,* 78 F.R.D. 460, 474 (N.D.Cal.1978); *Harriss v. Pan American World Airways, Inc.,* 74 F.R.D. 24, 36 (N.D. Cal.1977). These criteria are set forth in the margin.[4] As will be seen, plaintiffs have demonstrated sufficient compliance with these requirements to warrant certification of their class.

### 1. *Numerosity*

Rule 23(a)(1) requires a showing that "the class is so numerous that joinder of all members is impracticable." Plaintiffs con-

---

**3.** There are three provisions alleged to be arbitrary and capricious: the two-year break-in-service rule that was in effect prior to August 1, 1975; the age and length-of-service vesting requirements that were in effect prior to February 1, 1973; and the method used by the Trust Fund to compute pension credit in years and fractions of years. *See* p. 673, *supra.*

**4.** Rule 23 of the Federal Rules of Civil Procedure provides:

"(a) One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

"(b) An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

"(1) the prosecution of separate actions by or against individual members of the class would create a risk of

"(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

"(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

"(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

"(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

cede the difficulty of establishing the exact size of the putative class, but contend that the number of laborers affected by the challenged provisions is more than adequate to satisfy the rule.

■■ According to the affidavit of Richard Drogin, plaintiffs' expert computer programmer and statistical analyst, defendants' records show there are more than 7,000 laborers who have worked in covered employment for at least 10,000 hours but who do not meet the Trust Fund's pension eligibility requirements either because of a break in service or because of the method used to compute pension credits. More precise computation is made impossible both because of minor inaccuracies in defendants' record-keeping system and because the putative class includes an unknown number of laborers who will fail to qualify for a pension in the near future because of one or more of the challenged provisions.[5] It is well settled that mere failure to state the exact number of putative class members does not preclude maintenance of a class action. *See, e. g., Carpenter v. Davis,* 424 F.2d 257, 260 (5 Cir. 1970); *Souza v. Scalone,* 64 F.R.D. 654, 657 (N.D.Cal.1974), *vacated and remanded on other grounds,* 563 F.2d 385 (9 Cir. 1977); *Sero v. Oswald,* 351 F.Supp. 522, 528 (S.D.N.Y.1972); *Fischer v. Kletz,* 41 F.R.D. 377, 384 (S.D.N.Y. 1966). Because the putative class contains at least several thousand members, however, the Court finds that the numerosity requirement of Rule 23(a)(1) has been easily satisfied. *See Sullivan v. Chase Inv. Services of Boston, Inc.,* 79 F.R.D. 246, 257 (N.D. Cal.1978); *Souza v. Scalone, supra,* 64 F.R.D. at 657; *Ellis v. Naval Air Rework Facility,* 404 F.Supp. 391, 396 (N.D.Cal. 1975).

### 2. *Common Questions of Law or Fact*

■ The second prerequisite of Rule 23(a) is that "there are questions of law or fact common to the class." That is, at least some of the issues in the case must be raised by each member of the putative class. *See Blackie v. Barrack,* 524 F.2d 891, 902–905 (9 Cir. 1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976); *Like v. Carter,* 448 F.2d 798, 802 (8 Cir. 1971), *cert. denied,* 405 U.S. 1045, 92 S.Ct. 1309, 31 L.Ed.2d 588 (1972). This is to ensure that plaintiffs' complaints are "more than factually unrelated, individualized personal claims," the resolution of which would not be aided by class treatment. *See Wofford v. Safeway Stores, Inc., supra,* 78 F.R.D. at 478.

■ Not all of the putative class members were denied or will be denied pension benefits for identical reasons. However, each plaintiff asserts that he was or will be denied benefits as the result of the application of one or more of the challenged rules. Moreover, each asserts that because of the challenged rules, the pension plan is arbitrary and capricious in its impact, excluding a significant number of laborers from benefits, in violation of section 302(c)(5) of the Taft-Hartley Act, 29 U.S.C. § 186(c)(5), and the fiduciary duty obligation established by ERISA, 29 U.S.C. §§ 1001 *et seq.* This allegation, presenting the issue of whether the operation of the eligibility structure of the Trust Fund's pension plan violates ERISA or the Taft-Hartley Act, raises a common question of law sufficient to meet the requirements of Rule 23(a)(2). Other courts have so held. *See, e. g., Souza, supra,* 64 F.R.D. at 657 (common issue of whether age requirement for pension eligibility is arbitrary and unreasonable satisfies Rule 23(a)(2)); *Miranda v. Audia,* No. 75–0517–GT (S.D.Cal., Memorandum of Opinion filed March 22, 1977, at p. 3) (common issue of whether rule requiring 15 years of credited service for pension eligibility is arbitrary and unreasonable satisfies Rule 23(a)(2)); *see also Cottrell v. VEPCO,* 62 F.R.D. 516, 519 (E.D.Va.1974) ("Disparate facts which merely set the stage for alleged common

---

5. Defendants are correct in their assertion that there may have been additional reasons why some of the putative class members did not qualify for benefits. However, the Court feels plaintiffs have demonstrated that the number of affected laborers far exceeds the number for which joinder would be practicable.

deprivations of rights have not been allowed to defeat 23(a)(2)'s requirement").

### 3. Typicality

■ Rule 23(a)(3) requires plaintiffs to show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class * * *." That is, the interests of the named plaintiffs must be sufficiently aligned with the interests of their fellow class members to ensure that each claim will be prosecuted with diligence and care. *See Wofford, supra,* 78 F.R.D. at 475.

■ Courts will not deny class certification merely because the claim of one or more class representatives arises in a factual context that varies somewhat from that of the other plaintiffs. *See, e. g., Donaldson v. Pillsbury Co.,* 554 F.2d 825, 831 (8 Cir. 1977); *Fischer v. Weaver,* 55 F.R.D. 454, 459 (N.D.Ill.1972). Their only concern is whether each representative's claim arises from the same practice or course of conduct that gave rise to the remaining claims, and whether the claims are all based on the same legal theory. Unless the allegations are "markedly different," 7 Wright & Miller, *Federal Practice and Procedure,* § 1764, at 128 (Supp.1977), to the extent that plaintiffs' differing interests would "affect the nature of an effective presentation of their claims * * *," *Gibson v. Local 40, Supercargoes & Checkers, etc.,* 543 F.2d 1259, 1264 (9 Cir. 1976), the courts will find the representative claims to be typical.

■ Plaintiffs all seek to attain the same result in this case: modification of the Trust Fund's eligibility criteria to permit them to qualify for pension benefits. Although their individual fact situations differ—depending on such factors as plaintiffs' length of employment, place of employment, age, and reason for termination—each of their claims is typical in that it arises from the application of one or more of the eligibility standards under attack. Central to each claim is the contention that the eligibility rules are arbitrary and capricious and have resulted in the exclusion from benefits of a significant number of laborers covered by the Trust Fund. Therefore, regardless of the existence of diverse issues of fact involving individual plaintiffs, their common concerns are sufficiently central to this action to satisfy the typicality requirement of Rule 23(a)(3). *See Cottrell v. VEPCO, supra,* 62 F.R.D. at 520; *Taliaferro v. State Council of Higher Education,* 372 F.Supp. 1378, 1387 (E.D.Va. 1974).

Defendants argue that there is no evidence that the representative plaintiffs' claims are typical of any unnamed plaintiff's claims. The Court is not persuaded. Although there is no concrete evidence in the record as to which eligibility rules caused disqualification of which unnamed plaintiffs, Mr. Drogin's analysis of defendants' records convinces the Court that the named plaintiffs' claims are representative and typical.

■ A stronger argument raised by defendants is that each of the representative plaintiffs is subject to an individual defense that requires him to be excluded from the class. This Court has held

"that where the record developed at or before the time of class certification requires the entry of judgment against a named plaintiff, that named plaintiff is not a member of any putative class and is therefore per se unable to serve as class representative." *Wofford, supra,* 78 F.R.D. at 477.

Therefore, any representative who is facially barred from relief must be disqualified from continuing further in the action. *But cf. Eisen, supra,* 417 U.S. at 177–178, 94 S.Ct. 2140 (court cannot undertake preliminary inquiry into merits of claim to determine whether class action may be maintained); *Harriss, supra,* 74 F.R.D. at 37 (certification decision cannot turn on whether representative's claim is meritorious).

Although the pension plan has a procedure for appealing the denial of an application for benefits, defendants point out that none of the three newest plaintiffs, Pelts, Dyer, or Greathouse, has ever invoked it.

678

Defendants therefore conclude that these plaintiffs, having "accepted the administrative denials of their pension applications [without seeking] any sort of appeal, timely or otherwise," should be barred from proceeding further.

■ The exhaustion doctrine will not be applied to disqualify these plaintiffs. As this Court noted in *Morgan v. Laborers Pension Trust Fund*, 433 F.Supp. 518, 529 (N.D.Cal.1977) (*Morgan I*), referring to plaintiff Stone:

"Stone challenges the legality of the break in service rule and the method of computing service credit. The Board has already determined this question in the cases of Stone and others; there is no reason to believe that it will change its position. *Where exhaustion of internal remedies would be 'wholly futile,' courts will not require union members to participate in a charade.*" (Emphasis added.)

It would be similarly "futile" to require these additional plaintiffs to exhaust their appeals remedies. Their claim does not assert that the challenged rules were inaccurately applied to their individual cases as much as it attacks the overall legality of the pension qualification guidelines. It is the allegedly arbitrary and capricious nature of the entire eligibility structure and the resulting exclusion of a significant number of laborers from benefits that is being challenged by plaintiffs' action, not the application of the eligibility rules to their particular employment histories. Therefore, unlike plaintiff Morgan, whose claim "attack[ing] the accuracy of the Trust Fund's calculation of his hours of service credit" was dismissed because "[t]he Court will not review the clerical work of a trust fund before a claimant has thoroughly exhausted his internal remedies," *Morgan I, supra*, 433 F.Supp. at 529, these plaintiffs will not be required to submit to an appeals procedure that is sure to result in a further denial of their claims. The Court will not exclude them as representatives due to their failure to exhaust.

■ Defendants also challenge plaintiff Greathouse on statute-of-limitations grounds. They claim that he was denied a pension on September 3, 1974, and that, applying the four-year statute of limitations, *see Morgan I, supra*, 433 F.Supp. at 526, his failure to join the class until November 3, 1978 should cause him to be excluded. However, the filing of a class action suit tolls the running of the statute of limitations for all members of the putative class. *See American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 552–554, 94 S.Ct. 756, 38 L.Ed.2d 713, *rehearing denied*, 415 U.S. 952, 94 S.Ct. 1477, 39 L.Ed.2d 568 (1974). Because plaintiff Greathouse was clearly a member of the putative class, and because the initial complaint was filed on June 21, 1976, within four years of his pension denial, the Court holds that Greathouse should not be prevented from representing the class.

■ Defendants also claim that plaintiff Morgan should be excluded from the class because he died in June 1977, and no motion for substitution has been made as required by Rule 25(a) of the Federal Rules of Civil Procedure. However, Rule 25(a) does not mandate dismissal of Morgan at this time. It provides that

"[u]nless the motion for substitution is made not later than *90 days after the death is suggested upon the record* by service of a statement of the fact of the death as provided herein for the service of the motion, the action shall be dismissed as to the deceased party." (Emphasis added.)

Although Morgan apparently died in 1977, this Court was not made aware of that fact until November 22, 1978, when defendants filed their brief in opposition to plaintiff's motion. Therefore, even if defendants' brief is construed as a "statement of the fact of the death," the period for filing a motion of substitution has not yet expired. *See* 3B Moore's *Federal Practice*, ¶ 25.06[2.–1], at 25–231–232; *Dolgow v. Anderson*, 45 F.R.D. 470, 471 (E.D.N.Y.1968). Morgan will therefore not be excluded as a class representative at this time.

■ Defendants make a more compelling statute of limitations argument with

respect to plaintiffs Brice and Stone. As noted by this Court in *Morgan I*, Brice filed his lawsuit too late to challenge the Trust Fund's November 17, 1971 denial of his pension application. *See Morgan I, supra*, 433 F.Supp. at 526–527. However, he reapplied for benefits in 1974. If this application and the Trust Fund's subsequent denial did more than reiterate the issues and resolutions of the 1971 application, the new claim would probably not be time barred. *See ibid.* Plaintiffs concede, however, that. the second application raised no new issues. It was denied "due to lack of new evidence." The Court must therefore find that application of the four-year statute of limitations prevents Brice from serving as a class representative.

The Court reaches the same conclusion with respect to plaintiff Stone. Subsequent to *Morgan I*, the parties discovered that Stone had been denied a pension on December 12, 1971. The reasons for the 1975 denial were identical to the reasons for the 1971 denial. Therefore, as plaintiffs concede, Stone's claim is barred by the statute of limitations as well, and he cannot continue as a class representative.

■ Defendants' final challenge is to plaintiff Dodson. Citing this Court's refusal to permit Dodson to challenge his pension denial under ERISA, *Morgan I, supra*, 433 F.Supp. at 523–526, and its order "that plaintiffs' claims under § 302 of LMRA are dismissed with the exception of those claims accruing after June 21, 1972," *id.* at 531, defendants contend that "Mr. Dodson's case thus is subject to dismissal too in due course; but in any event, he is not an adequate class representative for any issue."

Defendants misinterpret the Court's order in *Morgan I*. Plaintiff Dodson has not been precluded from raising a claim under § 302 of the Labor Management Relations Act. In fact, the Court explicitly stated: " * * * Dodson may challenge his pension denial as a violation of § 302 because it occurred on June 21, 1972, exactly four years before this action was filed." *Morgan I, supra*, 433 F.Supp. at 526.

Therefore, because plaintiff Dodson's LMRA claim is still in issue, the Court holds that he is a proper class representative.

### 4. Adequate Representation

■ The fourth requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." This is to ensure protection of the due process rights of the members of the class whose rights will be adjudicated despite their absence. *See Harriss, supra*, 74 F.R.D. at 42–43; *Clark v. South Central Bell Tel. Co.*, 419 F.Supp. 697, 701 (W.D.La. 1976).

■ As this Court pointed out in *Wofford, supra*, this requirement of adequate representation consists of two elements:

"First, the named plaintiffs' counsel must be qualified, experienced, and generally able to conduct the litigation. *E. g., Fendler v. Westgate-California Corporation*, 527 F.2d 1168 (9 Cir. 1975). Courts may take into account any prior failure to proceed in the best interests of the putative class in this litigation, as well as counsel's general qualifications. * * *

\* \* \* \* \*

"The second element of adequate representation focuses on the named plaintiffs themselves. It is clear that there must be no evidence of collusion or of conflicting interests between the named plaintiffs and members of the class. *E. g., Harriss v. Pan American World Airways, Inc., supra*, 74 F.R.D. at 42. Beyond this, a named plaintiff must display some minimal level of interest in the action, familiarity with the practices challenged, and ability to assist in decision-making as to the conduct of the litigation. *In re Goldchip Funding Company*, 61 F.R.D. 592, 594–595 (M.D.Pa.1974); *see Marshall v. Target Stores, Inc.*, 11 F.E.P. Cases 775 (E.D.Mo.1975); *Hyatt v. United Aircraft Corp.*, 50 F.R.D. 242, 245 (D.Conn.1970)." 78 F.R.D. at 486–487.

*Accord, Wetzel v. Liberty Mutual Ins. Co.*, 508 F.2d 239, 247 (3 Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679

(1975); *Harriss, supra,* 74 F.R.D. at 42; *Dolgow v. Anderson,* 43 F.R.D. 472, 494 (E.D.N.Y.1968).

■ Defendants attack the competency of counsel by pointing to the 2½ year delay between the filing of the complaint and the filing of the motion for class certification. Arguing that this delay violates Local Rule 200–6(c),[6] they contend that "[f]ailure to protect the interests of putative class members by moving to certify in a timely manner reflects * * * upon the adequacy of representation * * *."

The Court must reject this argument. First, the complaint was filed on June 21, 1976, over a year before the applicable date of Local Rule 200–6. Second, the Court has already approved the parties' stipulation with respect to the timing of plaintiffs' class certification motion. *See* Stipulation and Order, Oct. 31, 1978; *see also* Local Rule 200–6(c) (class certification may be filed "at such later time as the assigned judge may order or permit"). Third, the Court finds that the complexity of the case, the difficulty in translating defendants' computer tapes into meaningful statistics, and the need to undertake substantial discovery before determining the appropriateness of the class action all serve to justify plaintiffs' delay in filing their motion. *See Wofford, supra,* 78 F.R.D. at 487; *Souza, supra,* 64 F.R.D. at 656. Moreover, in light of the Court's familiarity with the abilities of plaintiffs' counsel, the Legal Aid Society of Alameda County, as reflected in many previous cases as well as in the papers filed to date in this case, it must be concluded that counsel are amply qualified to conduct this litigation on behalf of absent members of the class.

■ The requirement that the individual plaintiffs be adequate representatives of the class has also been met here. As shown by this Court's previous discussion of "com-monality" and "typicality," the named plaintiffs share the same interests as those held by the other members of the putative class. Moreover, because the representatives seek the right to a lifelong pension, it can be assumed that they are keenly interested in the vigorous prosecution of this suit. That is all that is needed.

■ Although defendants contend that there is a conflict between the named plaintiffs who have already retired and those in the class who will retire in the future, they offer no indication of what that conflict would be. A party's speculation or conjecture that a conflict might exist, unsupported by reasoned analysis or underlying evidence, should not preclude a court from finding that plaintiffs' representation is adequate. *See Haas v. Pittsburgh Nat. Bank,* 72 F.R.D. 174, 177 n. 3 (W.D.Pa. 1976); *Marshall v. Electric Hose and Rubber Co.,* 68 F.R.D. 287, 292 (D.Del.1975). The Court does not perceive any interests of the present retirees that are antagonistic to the interests of future retirees. All desire a pension plan eligibility structure that is not arbitrary or capricious and that does not exclude from benefits a significant number of workers in covered employment. The relief sought, if granted, would inure to the benefit of all. *See Wetzel, supra,* 508 F.2d at 247–248. Although defendants might have argued that the granting of benefits to present retirees would diminish the amount of money potentially available to future retirees, the Court could not accept this argument. Future retirees have *no* legally cognizable right to pension benefits computed on the basis of an eligibility structure that operates in an arbitrary and capricious manner. *Cf. Souza, supra,* 64 F.R.D. at 657. Therefore, the Court finds that the named plaintiffs are adequate representatives and that the requirements of Rule 23(a) have been fully met.

---

**6.** Local Rule 200–6 provides in pertinent part:

"In any action sought to be maintained as a class action:

* * * * *

(c) The party seeking to maintain an action as a class action shall file a motion for a determination whether it may be so maintained pursuant to Rule 23(c)(1) within six months of the filing of that party's first pleading, or at such later time as the assigned judge may order or permit."

### 5. *Rule 23(b)*

In addition to satisfying the four prerequisites of Rule 23(a), a plaintiff seeking class certification must demonstrate compliance with one of the three subsections of Rule 23(b). Here, plaintiffs allege compliance with Rule 23(b)(2), contending that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole * * *." Fed.R.Civ.P. 23(b)(2).

Although they concede that plaintiffs seek injunctive and declaratory relief, defendants argue that the request for monetary damages makes this case inappropriate for Rule 23(b)(2) certification. They contend that "injunctive relief alone would be futile and make no practical sense without awards of retroactive pension benefits" and that "the amount involved could obviously be so substantial as to predominate clearly over any 'injunctive' relief." This contention must be rejected.

█ Although Rule 23(b)(2) was not intended to apply to class actions in which the requested relief consisted exclusively or predominantly of monetary damages, courts are not precluded from certifying a class under Rule 23(b)(2) merely because plaintiffs have included a request for monetary damages in their complaint. Rather, "[w]here the monetary relief sought is integrally related to and would directly flow from the injunctive or declaratory relief sought, 23(b)(2) status is appropriate." *Souza, supra,* 64 F.R.D. at 658; *see Robinson v. Lorillard Corp.,* 444 F.2d 791, 801–802 (4 Cir.), *cert. denied,* 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 655 (1971); *Wofford, supra,* 78 F.R.D. at 478; *Harriss, supra,* 74 F.R.D. 24, 46; *Lynch v. Sperry Rand Corp.,* 62 F.R.D. 78, 85 (S.D.N.Y.1973).

█ In this action, the request for monetary damages does not predominate. Plaintiffs are challenging the structure of the Trust Fund's pension eligibility rules. They seek a declaration that the rules as presently constituted are in violation of the law and an injunction forcing defendants to modify them. If this injunctive relief is granted, monetary damages in the form of pension benefits due under the reconstituted rules "would directly flow from the injunctive or declaratory relief sought." Therefore, the Court must find that Rule 23(b)(2) has been satisfied. *Accord, Souza, supra,* 64 F.R.D. at 658 (plaintiffs sought declaration that pension plan had not been administered for sole and exclusive benefit of employees, injunction against further application of challenged rule, and payment of retirement benefits that had been denied because of challenged rule); *Miranda v. Audia,* No. 75–0517–GT (S.D.Cal., Memorandum of Opinion filed March 22, 1977, at pp. 2–3) (plaintiffs sought declaration that pension plan was not being administered for sole and exclusive benefits of beneficiaries, restructuring of plan, and payment of pension benefits that had been denied because of challenged rule); *Daniel v. Int'l Brotherhood of Teamsters,* No. 74–C–2865 (N.D.Ill., Memorandum of Opinion filed June 29, 1977, at p. 6) (plaintiffs sought injunction against continued operation of pension eligibility rules and payment of monetary damages).

### 6. *Notice*

█ Defendants further contend that if this Court finds class certification appropriate, it must order notice of the class action to be sent to each member of the class and it must further order plaintiffs to bear the expense of this notification. The Court does not agree.

In *Elliott v. Weinberger,* 564 F.2d 1219 (9 Cir. 1977), appellants argued that each member of a class certified under Rule 23(b)(2) is entitled to notice of the pendency of the litigation and that failure to provide such notification deprives those members of their due process rights. The Court of Appeals for the Ninth Circuit, citing a long line of cases, disagreed, holding:

"The weight of authority supports the interpretation that due process does not require notice in every (b)(2) class action. [Footnote omitted.] Only when neces-

sary to provide class members an opportunity to signify whether representation by named plaintiffs is fair and adequate or to intervene to present additional claims or to otherwise come into the action to, for example, submit views as *amici curiae*, does due process require the direction of some sort of notice to absent members of a (b)(2) class." 564 F.2d at 1228–1229.

None of these qualifying factors is present in this case. As noted earlier, the named plaintiffs' representation of the class is "fair and adequate"; their counsel are skilled and experienced and their own interests are representative. Because the claims of the plaintiffs now before this Court sufficiently pose the issues and arguments presented for resolution, there is no need for additional plaintiffs to appear. In fact, the presentation of additional claims would be more likely to cause additional delay and complication than to aid the Court in its factfinding. As to defendants' contention that there are special defenses applicable to individual plaintiffs, the Court concludes that these can be raised at a later "damage" trial of individual claims if plaintiffs ultimately prevail in this litigation. For these reasons, the Court holds that the due process rights of the absent members will be protected by the representation of the named plaintiffs, and that they will "[receive] their functional equivalent to a day in court," *Elliott, supra*, 564 F.2d at 1229. Therefore, no notification to absent members of the class will be required.

### 7. ERISA Policy

Defendants' final contention is that even if all the requirements of Rule 23 have been satisfied, the Court must deny class certification because one of the legal bases for plaintiffs' suit is ERISA, and the policies underlying ERISA do not support class actions. Conceding that this argument receives no direct support in either the statute itself or in its legislative history, defendants nonetheless insist that the congressional purpose and intent surrounding ERISA "are so antithetical to a rote appli-

cation of Rule 23 principles that the Court must approach the [class action] from a totally different perspective than other types of actions."

■ The Court is unpersuaded. Defendants cite no compelling authority in support of their argument. There is nothing in the Court's reading of the statute that indicates that a seemingly proper Rule 23 class action should not be certified merely because it is brought in part under ERISA. And in fact, other courts have approved class actions in which plaintiffs had challenged the arbitrariness of pension eligibility provisions under ERISA. *See, e. g., Robinson v. United Mine Workers*, 449 F.Supp. 941 (D.D.C.1978) (class action brought under § 302 of Taft-Hartley Act and § 404(a)(1) of ERISA by survivors of deceased miners against union trustees, claiming that trustees' failure to reform health and death benefit trust violated their fiduciary responsibility).

For the above reasons, the motion for class certification will be granted.

Accordingly, IT IS HEREBY ORDERED that plaintiffs may amend their complaint to add Robert Pelts, George Dyer, and Daniel C. Greathouse as additional plaintiffs.

IT IS HEREBY FURTHER ORDERED that if defendants need additional time in which to take discovery regarding these three new plaintiffs, they should file a motion for extension of discovery time with this Court within ten (10) additional days of this order.

IT IS HEREBY FURTHER ORDERED that the claims of plaintiffs Brice and Stone are dismissed because of the application of the statute of limitations.

IT IS HEREBY FURTHER ORDERED that this action will proceed as a Rule 23(b)(2) class action on behalf of all hourly laborers who have or shall have worked at least 10,000 hours in the construction industry and have been, now are, or shall be unable to qualify for pension benefits because of the application of the Trust Fund's break-in-service rule that was in effect prior to August 1, 1975; or the Trust Fund's

age and length-of-service vesting requirements that were in effect prior to February 1, 1973; or the method used by the Trust Fund to compute pension credit in years and fractions of years, either alone or in combination.