**Johanna BRUCE, on behalf of herself and all others similarly situated, Plaintiffs,**

v.

**Joseph J. CHRISTIAN, individually and as Chairman of the New York City Housing Authority; and the New York City Housing Authority, Defendants.**

No. 84 Civ. 5177.

United States District Court, S.D. New York.

Nov. 25, 1986.

On Motion to Compel Dec. 9, 1986.

As Amended Feb. 13, 1987.

Lucy Billings, Bronx Legal Services, Bronx, for plaintiffs.

Charles E. William, III, New York City Housing Authority, New York City, for defendants; Joan Pannel, Cecelia Fusillo, of counsel.

KRAM, District Judge.

The above-captioned matter is before the Court upon plaintiff's motion pursuant to Fed.R.Civ.P. 23, seeking an order for class certification on behalf of the proposed plaintiff class. The named representative, Johanna Bruce, brings this action on behalf of herself and all present and future tenants of the New York City Housing Authority whose tenancies have been or will be terminated after administrative hearings by the Housing Authority upon charges of non-desirability, and whose continued occupancy subject to probation and permanent exclusion of the offending member of the household has or will be denied by the Housing Authority.

Plaintiff brings this action challenging the Housing Authority's alleged "policy and practice" of ratifying tenancy termination decisions made by administrative hearing officers where there was insufficient evidence to support a finding that the offending member of the household was still residing in the tenant's apartment.

Plaintiff alleges:

1. Defendants' policy and practice of rendering decisions which approve the decision of a hearing officer to terminate class members' tenancies absent substantial evidence of the offending member's actual habitation with the plaintiff or rebuttal of class members' evidence that the offender has been removed, are arbitrary, capricious, an abuse of discretion, and violate plaintiffs' federal and state due process rights. *See* Complaint, p. 7.

2. Defendants' policy and practice of rendering decisions which approve a hearing officer's decision to terminate class members' tenancies, disregarding controlling law as to sufficiency of evidence required to establish offenders' residency and in violation of the Housing Authority's own termination of tenancy procedures relating to mandatory lessor dispositions, are arbitrary, capricious, an abuse of discretion, and violate class members' federal and state due process rights. *See* Complaint, p. 8.

3. Defendants' policy and practice of terminating class members' tenancies after offending members are removed from the class members' households is excessively punitive, offensive to principles of fairness and results in unconscionable hardship to class members and their families. As such, said policies and practices are arbitrary, capricious, an abuse of discretion, and violate class members' federal and state due process rights. *See* Complaint, p. 8.

Plaintiff requests declaratory and injunctive relief as well as damages and attorneys fees.

## DISCUSSION

*Motion for Class Certification*

Rule 23 provides in relevant part as follows

(a) Prerequisites to a class action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims and defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) ... and in addition:

(1) The prosecution of separate actions by or against individual members of the class would create a risk of:

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudication, or

(2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or declaratory relief with respect to the class as a whole;

As the rule indicates, all four of the requirements of subsection (a) and in addition, at least one of the requirements of subsection (b), must be satisfied before a suit is maintainable as a class action. *See also, Guardians Ass'n of the New York City Police Dep't. Inc. v. Civil Serv. Comm'n.*, 431 F.Supp. 526, 531 (S.D.N.Y. 1977), *vacated on other grounds*, 562 F.2d 38 (2d Cir.1977), *cert. denied*, 463 U.S. 1228, 103 S.Ct. 3568, 77 L.Ed.2d 1410 (1983). The party who seeks class certification has the burden of showing that all of the prerequisites of Rule 23 have been satisfied. *Katz v. Carte Blance Corp.*, 52 F.R.D. 510, 512–513 (D.C.Pa.1971).

### 1. The Numerosity Requirement

The proposed class must be so numerous that joinder of all members is impracticable. However, the Courts have established no "magic number" for determining numerosity in class actions. *Ewh v. Monarch Wine Co., Inc.*, 73 F.R.D. 131, 132 (E.D.N.Y.1977); *Stoner v. Miller*, 377 F.Supp. 177, 179 (E.D.N.Y.1974). What constitutes impracticability or numerosity depends on the particular facts of each case. *Id.* 73 F.R.D. at 133. While the moving party is not required to show the exact number of potential class members in order to satisfy the numerosity prerequisite, *Deary v. Guardian Loan Co., Inc.*, 534 F.Supp. 1178, 1190 (S.D.N.Y.1982); *Siegel v. Realty Equities Corp. of New York*, 54 F.R.D.

420, 424 (S.D.N.Y.1972), mere speculation as to the number of parties involved is not sufficient to satisfy the requirement. *Lloyd v. Industrial Bio-Test Labs., Inc.,* 454 F.Supp. 807, 812 (S.D.N.Y.1978).

■ This action involves present and future tenants of the New York City Housing Authority, the exact number of which can only be ascertained by the defendants. While plaintiff thus far has identified only 16 cases which support her claims, it is clear that the conduct complained of affects or will affect numerous individuals whose joinder is impracticable. Moreover, the fluid composition of the public housing population is particularly well suited for status as a class because while the identity of the individuals involved may change, the nature of the harm and the basic parameters of the group affected remain constant. *Powell v. Ward,* 487 F.Supp. 917, 922 (1980), *cert. denied,* 454 U.S. 832, 102 S.Ct. 131, 70 L.Ed.2d 111 (1981).

In addition, the inability of the individual class members to institute an action on their own behalf necessitates class certification. The proposed class members are by definition without sufficient means to meet their basic subsistence needs and necessarily cannot afford to obtain legal representation to assert their claims. "Since one of the purposes of the class action device is to provide a mechanism for people with small claims to redress their grievances, a determination that it would be financially difficult or impossible for class members to bring individual actions would demonstrate impracticability...." 7 C. Wright and A. Miller, Federal Practice and Procedure § 1762 (1972).

Defendants argue that the named plaintiff cannot show numerosity because the facts of her own case do not show insubstantial evidence for the hearing officer's finding of residency and she has presented no other cases which support her claim.

As stated above, plaintiff has found 16 other cases where probation and permanent exclusion were denied and where "uncontroverted and overwhelming evidence" established that the offender did not reside in the tenant's household. Furthermore, plaintiffs allege a "policy and practice" of noncompliance with the termination of tenancy procedures that affects or will affect numerous individuals whose joinder is impracticable. Defendants' argument that plaintiff's own case does not show insubstantial evidence for the hearing officer's finding of residency is without merit. The strength or weakness of the representative plaintiff's claim is not relevant to satisfaction of the numerosity requirement.

Accordingly, the numerosity requirement is satisfied.

### 2. *Common Questions of Law or Fact*

■ Rule 23(a)(2) requires that there be questions of law or fact common to the class. Defendants argue that because plaintiff claims common questions regarding the substantiality of evidence as to residency she can show neither common questions of law or fact nor a risk of inconsistent adjudications in individual cases. Defendants contend that the substantiality of evidence as to residency must be considered on a case-by-case basis and will necessarily vary with the facts of each case. Therefore, defendants assert that no determination of this issue in an individual case can substantially impair the interest of another tenant asserting the same claims.

This Court finds that plaintiff does raise questions of law and fact common to the class. Plaintiff does not merely claim illegality based on lack of substantial evidence. Plaintiff alleges a pattern of noncompliance with the rules governing Termination of Tenancy Procedures, including failure to apply mandatory lesser dispositions of probation and permanent exclusion, when the offender no longer resides in the tenant's household. As a part of this policy and practice, plaintiff alleges that defendants continuously and systematically engage in a pattern of finding that the offender does reside with the tenant regardless of uncontroverted and overwhelming evidence presented to the con-

trary and without any basis for discrediting that evidence. *See* Plaintiff's Reply Memorandum in Support of Motion for Class Certification, p. 2.

The question of whether the defendants' alleged policy and practice of terminating tenancies in non-compliance with the rules governing Termination of Tenancy Procedures is illegal and violates tenants' federal and state due process rights is common to all members of the class. Furthermore, in each claim there is a common question as to whether the conduct alleged violates the Housing Authority Termination of Tenancy Procedures.

Some variation in the factual circumstances of each class members' claim does not undermine satisfaction of the common questions requirement where, as here, the defendants' alleged policy and practice violates the same rights and gives rise to the same claims by all members of the class. *Like v. Carter*, 448 F.2d 798, 802 (8th Cir. 1971), *cert. denied*, 405 U.S. 1045, 92 S.Ct. 1309, 31 L.Ed.2d 588 (1972).

Plaintiff satisfies the common questions requirement.

### 3. *Typicality of Representatives' Claims*

■ Rule 23(a)(3) requires that the claims or defenses of the representative parties are typical of the claims and defenses of the class as a whole.

Defendants make essentially the same argument regarding plaintiff's inability to satisfy the typicality requirement as they did regarding the numerosity and common questions requirements. Defendants assert that the substantiality of evidence as to residency will necessarily vary with each case and therefore no individual plaintiff's claim can be typical of any other class member's claim.

Further, defendants argue that the named representative's own claim shows no error which could have been apparent to the Housing Authority and that in fact no error was made regarding the termination of her tenancy. Therefore, defendants con-

tend that the representative's claim is not typical of the claims asserted by the class.

These arguments fail. The mere fact that the representative plaintiff stands in a different factual posture is not sufficient grounds to refuse certification. Atypicality or conflict of claims must be clear and must be such that the interests of the class are placed in significant jeopardy. *Sley v. Jamaica Water & Utilities, Inc.*, 77 F.R.D. 391 (D.C.Pa.1977). The claims of the named plaintiff, Bruce, are typical of the claims of the class in that all members of the class assert that defendants' policies and practices result in termination of their tenancies in violation of state and federal law and violate their due process and equal protection rights.

■ It has been held that the typicality requirement may be satisfied notwithstanding factual distinctions between the claims of the named plaintiffs and those of other class members. *United Independent Flight Officers, Inc. v. United Airlines, Inc.*, 572 F.Supp. 1494 (D.C.Ill.1983), *aff'd*, 756 F.2d 1274 (1985). Further, factual differences will not necessarily render a claim atypical if the claim arises from the same course of conduct and is based on the same legal theory as the claims of the class. *See, e.g., Smith v. B & O Railroad Co.*, 473 F.Supp. 572 (D.C.Md.1979); *Fischer v. Weaver*, 55 F.R.D. 454 (N.D.Ill.1972).

Plaintiff Bruce's claims are typical of those raised on behalf of the class. Bruce asserts the same claim, arising out of the same policies and practices by the defendant, based on the same legal theories as the claims of the class. Therefore, it is clear that the typicality requirement is satisfied.

### 4. *Adequacy of Representation*

■ Rule 23(a)(4) provides that a class action is maintainable only if the representative parties will fairly and adequately protect the interests of the class. This requirement is comprised of two elements: (1) "that the interests of the representative party ... coincide with those of the class; and (2) that the representative party and his attorney can be expected to prosecute

the action vigorously." *Mersay v. First Republic Corp.*, 43 F.R.D. 465, 469 (S.D.N.Y.1968). *See also, Kuch v. Berkey Photo, Inc.*, 81 F.R.D. 736, 740 (S.D.N.Y.1979).

Defendants apparently concede that this requirement has been met. The named plaintiff does not have interests divergent from the rest of the class. Furthermore, the named plaintiff is represented by counsel experienced in prosecuting class actions and federal housing litigation.

The named plaintiff seeks a continuation of her tenancy in compliance with the mandatory provisions of the Housing Authority's Termination of Tenancy Procedures § (B)(13). Since plaintiff alleges a policy and practice of termination of tenancies in non-compliance with said provisions, the interests of the representative plaintiff are co-extensive with the interests of the other members of the class.

Accordingly, the Court finds that the named plaintiff can fairly and adequately represent the class.

*Rule 23(b) Requirement*

■ Plaintiffs contend that this action satisfies both subdivision b(1) and b(2).

Defendants argue against certification under either subdivision b(1) or b(2), asserting that plaintiff claims common issues of substantiality of evidence as to residency, an issue of law which necessarily varies with the facts of each case. Therefore, defendants assert that plaintiff cannot show a risk of inconsistent adjudications in individual cases or that the Housing Authority acted or refused to act on grounds generally applicable to the class.

This argument has already been rejected by the Court. The plaintiff challenges the alleged policy and practice by the defendants of terminating plaintiffs' tenancies in non-compliance with the mandatory provisions of the Housing Authority's Termination of Tenancy Procedures. Plaintiffs allege a pattern which affects all members

of the class. Thus, Rule 23(b)(2) is satisfied.

This action is a paradigmatic Rule 23(b)(2) class action. Plaintiffs seek class-wide structural relief that would clearly redound to the benefit of each class member. *Marcera v. Chinlund*, 595 F.2d 1231, 1240 (2d Cir.1971), *vacated on other grounds*, 442 U.S. 915, 99 S.Ct. 2833, 61 L.Ed.2d 281 (1979).

■ The Court finds that this action satisfies all of the prerequisites of Rule 23(a) and 23(b)(2). Accordingly, class certification is granted.

SO ORDERED.

## ON MOTION TO COMPEL

The facts of this action are fully set forth in the Court's opinion granting class certification. The Court will assume familiarity with those facts in this decision.

Plaintiff moves the Court, pursuant to Fed.R.Civ.P. 37, to compel production of "all memoranda to the Housing Authority General Counsel recommending settlement of an Article 78 proceeding to review a termination of tenancy based on a non-desirability charge." *See* plaintiff's Memorandum of Law in Support of Motion to Compel Production, p. 4. Plaintiff requested production of these documents in its First Set of Interrogatories and Request for Production of Documents.

Plaintiff asserts that pursuant to Rules 33 and 34, defendants' failure to object to the discovery request within thirty days represents a waiver of their objections to discovery.[1] Plaintiff also argues that the documents set forth are not "work product" under *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), because the memoranda are not related to mental impressions or legal theories upon which defendants' attorneys are defending this case.

---

1. Plaintiff's first assertion, that defendants procedurally waived any objection to discovery by failing to timely object to plaintiff's initial discovery request, was decided in conference. The Court determined that defendants had not procedurally waived either attorney-client privilege or work product immunity.

Plaintiff further claims that even if the Court should find that these memoranda are work product, they remain subject to discovery under the "substantial need" and "undue hardship" exceptions to work product immunity, as codified in Fed.R.Civ.P. 26(b)(3). Plaintiff contends that she has a "substantial need" for these memoranda because they may yield proof that the Housing Authority has failed to comply with its own termination proceeding regulations. Plaintiff speculates that the memoranda may reveal that settlement recommendations were based on no more than a "flat admission" (Plaintiff's Memorandum, p. 4) that termination decisions rendered by the administrative hearing officers were contrary to Housing Authority regulations. In fact, plaintiff argues that these documents could reveal "an on-going cover-up" (Plaintiff's Memorandum, p. 7) of illegal conduct by the Housing Authority in tenancy terminations proceedings, whereby staff attorneys recommended settlement after finding that the administrative hearing officer neglected to follow hearing regulations.

Plaintiff also argues that the Housing Authority's legal department "may have encouraged such a practice or known of it and allowed it to continue" (Plaintiff's Reply Memorandum in Support of Motion to Compel Production, p. 6). Finally, plaintiff alleges "undue hardship" on the ground that defendants maintain exclusive control over the memoranda, and plaintiff has no alternative means of acquiring them.

Defendants seek to bar discovery on the grounds that the memoranda are protected both as work product and under attorney-client privilege. For the following reasons the Court finds that the memoranda are protected from discovery on both grounds. Plaintiff's motion to compel discovery of the memoranda is therefore denied.

## DISCUSSION

■ The memoranda plaintiff seeks are prepared by Housing Authority attorneys in anticipation of Article 78 proceedings brought to review administrative decisions that have terminated tenancies based on nondesirability. They contain an attorney's recommendation as to the appropriate legal resolution of the action. This conclusion is reached after both a review of the administrative hearing record and a discussion between the staff attorney and the tenant's housing project management. The memoranda are then sent to the Housing Authority's general counsel, who evaluates the findings. In cases where the Housing Authority's staff counsel recommends settlement, and general counsel agrees, general counsel simply forwards settlement terms to the Housing Authority attorney.

The memoranda plaintiff seeks are thus based in part on information received by Housing Authority attorneys from interviews with Housing Authority project managers. These employees speak confidentially to Housing Authority attorneys who seek to formulate strategy in litigation in which the Housing Authority is a defendant. Such communications are privileged as between attorney and client. Confidences employees reveal to in-house counsel acting as attorneys are accorded the same privilege that they would be accorded if they were revealed by a client to outside counsel. *Valente v. Pepsico, Inc.*, 68 F.R.D. 361, 367 (D.Del.1975). Full and frank discussion between project management and the attorneys would be hampered if such communications were subject to discovery.

■ The position of the employees within the Housing Authority structure is irrelevant to the issue of attorney-client privilege. Attorney-client privilege extends to any employee communicating on matters within the scope of his employment when that employee is aware that he is being questioned in confidence in order for his employer to obtain legal advice. *Upjohn v. United States*, 449 U.S. 383, 394, 101 S.Ct. 677, 685, 66 L.Ed.2d 584 (1981).

■ One exception to the attorney-client privilege is the crime or fraud exception, which states that communications otherwise protected by the attorney-client

privilege are not protected if they relate to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct. *In re Grand Jury Subpoena Duces Tecum,* 731 F.2d 1032, 1038 (2d Cir.1984). Plaintiff's allegations that defendants' memoranda contain admissions of illegality in the form of revealing an "on-going cover-up" of illegal tenancy terminations, would, if supported by more than hopeful speculation, establish such an exception to the attorney-client privilege.

But plaintiff offers no more than allegations that such proof would be found in these memoranda. Such bare allegations are insufficient to challenge the privilege that protects these documents from discovery. It should be noted that even if plaintiff is successful on the merits of her case, and does prove that the Housing Authority's tenancy termination hearings are not being conducted in accordance with Housing Authority regulations, such proof would not necessarily implicate the Housing Authority's legal staff in an illegal coverup.

 The Court also finds that these memoranda are work product, as described in *Hickman, supra,* and in Rule 26(b)(3), in that they contain conclusions, opinions and legal theories of an attorney and were prepared in anticipation of litigation. The fact that the memoranda were not prepared for the present litigation is not determinative, for the Supreme Court has noted that "the literal language of the Rule [26(b)(3)] protects materials prepared for *any* litigation or trial as long as they were prepared by or for a party to the subsequent litigation". *F.T.C. v. Grolier, Inc.,* 462 U.S. 19, 26, 103 S.Ct. 2209, 2213, 76 L.Ed.2d 387 (1983).

Such work product, if not also protected by attorney-client privilege, would be subject to the "substantial need" and "undue hardship" exceptions to work product immunity. A determination as to whether the memoranda could fall within those exceptions, however, is not necessary in this case, since the Court finds the memoranda protected by attorney-client privilege.

For the foregoing reasons, plaintiff's motion to compel is denied.[2]

SO ORDERED.

---

**2.** Otis Gardenhire, Irene Benson, Willalee Bryan Dume, Hazel Davis, and Geneva Holland have moved to intervene in this action. By stipulation of November 13, 1985, Gardenhire, Benson and Dume agreed that their motion should be held in abeyance until the Court ruled on plaintiff Bruce's motion for class certification. Hazel Davis stipulated similarly on December 17, 1985.

Geneva Holland has not so stipulated. Her counsel has acknowledged, however, that Holland's interests "might be adequately protected were a motion for class certification granted ..." (Memorandum in Support of Motion to Intervene, p. 6.) Since the Court has granted class certification, the Court will not distinguish Holland's motion from those of the other parties: the motions to intervene of all of the above mentioned parties will be dismissed unless the parties inform the Court within ten (10) days of this order of their decision to pursue the motions.